IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLUE MOTOROLA CELLULAR PHONE WITH A SHATTERED FRONT SCREEN AND A CAT STICKER ON THE BACK, SEIZED BY LAW ENFORCEMENT AFTER AN ARREST ON OCTOBER 6, 2023 | Case No. 2:24-mj-00202 |

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

I, James M Stalnaker, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the extraction and examination of electronically stored information from an electronic communication device seized by police on October 6, 2023, during the arrest of CHRISTOPHER TRENT SAUNDERS (hereinafter referred to as "SAUNDERS"). The device is more particularly described herein and in Attachment A and is a blue Motorola cellular phone with a shattered front screen and a cat sticker on the back (the "SUBJECT DEVICE"). The electronically stored information sought under this warrant is more particularly described herein and in Attachment B. The SUBJECT DEVICE is currently located at the Parkersburg Police Department, 1 Government Square, Parkersburg, West Virginia 26101.

2. I am currently a Police Officer for the Parkersburg, West Virginia, Police Department holding the rank of Lieutenant. I am currently the Officer in Charge (OIC) of the Investigative Division of the Parkersburg Police Department. I have been employed by the Parkersburg Police Department for twenty-three years and have been a Police Officer in the State

of West Virginia for twenty-seven years. I have held many different assignments while employed with the Parkersburg Police Department, such as but not limited to: Field Training Officer, K9 Officer, Detective, Task Force Officer, Coordinator of the Parkersburg Narcotics Task Force, Detective Sergeant and Lieutenant. I have completed numerous hours of specialized training, some of which deals with investigating crimes against persons and controlled substances/firearms investigations.

3. During my tenure with the Parkersburg Police Department, I have participated in numerous drug/firearm investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, firearms and records of drugs have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; (e) monitored wiretapped conversations of drug traffickers; and (f) conducted surveillance of individuals engaged in drug/firearm trafficking.

4. Based on my training, experience, and conversations with other experienced investigators, I have gained knowledge in the techniques and methods used by individuals to use their cellular phones and other electronic communication devices to facilitate their criminal activity.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all my knowledge about this investigation.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

6. The SUBJECT DEVICE is a blue Motorola cellular phone with a shattered front screen and a cat sticker on the back.

7. The SUBJECT DEVICE is currently located at 1 Government Square, Parkersburg, West Virginia 26101. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

8. On September 20, 2023, I sent a department email to "All Sworn Personnel" indicating there was a Grand Jury Indictment and arrest warrant for SAUNDERS, that the warrant was on file at Parkersburg Police Headquarters, and that he had been placed on the National Crime Information Center (NCIC) database. The Indictment was from the September 2023 term of the Wood County, West Virginia, Grand Jury.

9. On October 6, 2023, at approximately 4:30 AM, Parkersburg Police Patrolman L.R. Zmijewski (hereinafter "ZMIJEWSKI") observed a subject riding a bicycle on the sidewalk of 13th Street in Parkersburg, West Virginia, heading eastbound, and the bicycle did not have proper lighting in violation of a City of Parkersburg Ordinance dealing with lights and equipment on bicycles. ZMIJEWSKI activated the emergency lighting on his patrol car to stop the subject who eventually stopped in front of a residence at 1121 East 12th Street, Parkersburg, West Virginia, adjacent to the passenger side of a vehicle parked in front of that residence.

10. ZMIJEWSKI then recognized the bicyclist as being SAUNDERS and was aware of the active arrest warrant for SAUNDERS. Upon approach, according to ZMIJEWSKI, SAUNDERS profusely shouted "fuck", began emptying his pockets, and smashed the SUBJECT

3

DEVICE on the ground. SAUNDERS was placed under arrest on the warrant, the SUBJECT DEVICE was collected as evidence, and it was placed into the evidence room at Parkersburg Police Headquarters. The SUBJECT DEVICE was severely damaged because of SAUNDERS's actions.

11.  On October 6, 2023, at approximately 8:09 AM, Parkersburg Police Patrolman S.T. Wiley (hereinafter "WILEY") was dispatched to 1121 East 12th Street, Parkersburg, West Virginia, in reference to a found item. The residents of 1121 East 12th Street, Parkersburg, West Virginia, had located a firearm that had been placed under the passenger side of their vehicle, the same vehicle that SAUNDERS had stopped adjacent to prior to his arrest earlier that morning, and the residents had contacted the police upon noticing the firearm underneath their vehicle. The residents stated that after seeing the firearm they did not disturb it at any time. The location of the firearm would indicate that it was placed there after the vehicle was parked, as it was located behind the front passenger side tire and would have been driven over, likely causing damage to the firearm in the process. WILEY photographed the firearm in place, collected the firearm, and placed it into evidence at Parkersburg Police Headquarters. WILEY identified the firearm as being a Hi-Point, .380 caliber, Model CF380 pistol bearing Serial Number P8145281.

12.  On October 11, 2023, I contacted Don Brown (hereinafter "BROWN") who is the Director of School Safety for Wood County Schools, to inquire about surveillance video on the Board of Education building and Jefferson Elementary School which are near the arrest location of SAUNDERS. BROWN stated there would be surveillance cameras that cover the area of the arrest.

13.  I then traveled to BROWN's office and viewed surveillance video from the time SAUNDERS was arrested at approximately 4:30 AM on October 6, 2023, until the firearm was recovered by WILEY on the same date. The surveillance video shows ZMIJEWSKI activating the

emergency lights on his patrol car to stop SAUNDERS and SAUNDERS traveling to the passenger side of the parked car in front of 1121 East 12th Street, Parkersburg, West Virginia, while ZMIJEWSKI stops his patrol car on the driver's side of the parked vehicle. The surveillance video then depicts SAUNDERS bending over as if he was placing something under the parked vehicle in the same location the firearm was later located by WILEY. The surveillance video also shows that no other person was around this parked vehicle from the time SAUNDERS was arrested until the residents of 1121 East 12th Street, Parkersburg, West Virginia, located the firearm and contacted the police later that morning.

14. On October 25, 2023, I removed the firearm from evidence and conducted two test fires. I found the firearm to be a functional firearm. I did not notice any visible damage to the firearm consistent with it being ran over by a vehicle. An agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF) concluded that the firearm had been manufactured outside the State of West Virginia, meaning it had traveled in interstate commerce prior to October 6, 2023.

15. I found that SAUNDERS has a conviction for the felony offense of Malicious Assault from the Circuit Court of Wood County, West Virginia, case number 12-F-170. The sentencing order from 12-F-170 indicates that on February 25, 2013, SAUNDERS was sentenced by Circuit Judge Robert A. Waters for a term and period of imprisonment of not less than two (2) years nor more than ten (10) years, which would prohibit SAUNDERS from possessing firearms under federal law.

16. I also found that SAUNDERS was convicted in the United States District Court for the Southern District of West Virginia for being a Felon in Possession of a Firearm on April 10, 2019, case number 2:18-cr-00166. SAUNDERS was sentenced to a prison term of 63 months, to

5

be followed by 3 years supervised release, as a result of that conviction. He is currently serving the supervised release portion of this sentence.

17. Based on my training and experience, I believe that SAUNDERS, at the time of his arrest on October 6, 2023, was attempting to conceal and destroy evidence by placing the firearm under the vehicle and by attempting to destroy the SUBJECT DEVICE. SAUNDERS would have been aware that he could not lawfully possess firearms at the time of this arrest and would be aware that any evidence of criminal activity on the SUBJECT DEVICE, such as but not limited to evidence of firearm possession, could expose him to further prosecution. Also, another motivation to conceal or destroy evidence would have been SAUNDERS being aware he was on supervised release at the time of this arrest.

18. Based on my training and experience, it is common for individuals to utilize bicycles when they are involved in illegal activities due to it making them more discrete and easier to avoid or flee from law enforcement. Due to this I believe it is reasonable to examine the SUBJECT DEVICE for evidence of firearm possession.

19. Parkersburg is located in Wood County, West Virginia which is within the Southern District of West Virginia.

20. Based on my training and experience, probable cause exists that the SUBJECT DEVICE contains evidence of criminal activity by SAUNDERS within its electronic memory.

## **TECHNICAL TERMS**

21. Based on my training, experience, and conversations with other investigators, I use the following technical terms to convey the following meanings:

a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

22. The SUBJECT DEVICE is a cellular telephone. In my training and experience, examining data stored on cellular telephones can uncover the relevant evidence described above as well as evidence identifying who used or possessed the device.

20. The SUBJECT DEVICE is a Motorola product. In my training and experience, examining data stored on this kind of device can uncover the relevant cellular telephone evidence described above as well as evidence identifying who used or possessed the device. Often, such devices have different security protocols such that they may not all be locked, or one device may be more easily accessed by the examiner. In my training and experience, examining data stored

7

on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. The information would include but not be limited to text messages, multimedia messaging service (MMS) messages, and encrypted messages to and from coconspirators over various applications like SnapChat, Instagram, and Facebook. Phone logs, usernames, GPS locations, and images are also stored on electronic devices. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence is stored within the memory of the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the SUBJECT DEVICE. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

8

    b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether electronically stored information is evidence may depend on other information stored on the device and the application of knowledge about how electronically stored data works. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the applied-for warrant would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion

onto a premises. Consequently, I submit there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the information described in Attachment B.

Respectfully submitted,

*James J. St[alnaker]*
James M Stalnaker
Lieutenant
Parkersburg Police Department

Subscribed and sworn to before me by telephone pursuant to Fed. R. Crim. P. 41(d)(3)
On Dec. 10, 2024:

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE